865 F.2d 1268
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Henry L. MILLER, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 87-4131.
 United States Court of Appeals, Sixth Circuit.
 Jan. 13, 1989.
 
 Before MERRITT and RALPH B. GUY, Jr., Circuit Judges and EDWARD H. JOHNSTONE, District Judge.*
 PER CURIAM.
 
 
 1
 Claimant, Henry Miller, appeals from the denial of Social Security disability benefits. Miller claims disability since October 19, 1983, due to spondylitis and back pain. Miller's claim was denied administratively and after a hearing by an administrative law judge (ALJ). The ALJ found that Miller could do sedentary and light work and applied the grids to reach a determination of not disabled.
 
 
 2
 Upon appeal to the district court, the case was remanded by agreement of the parties[1] so that evidence could be received from a vocational expert (VE) as to what jobs were available that Miller could perform.
 
 
 3
 A supplemental hearing was held at which Miller, his wife, and a VE testified. Following the hearing Miller underwent a consultative physical examination. Thereafter, on June 4, 1986, the ALJ issued a recommended decision denying benefits. The ALJ found that Miller could do both light and sedentary work so long as he could change his position every two hours. The ALJ then held that Miller was not disabled because he retained the ability to do work which existed in significant numbers in the economy. This finding was based both on the grids and the testimony of the VE.
 
 
 4
 The Appeals Council, after considering claimant's objections to the ALJ's recommendation, found that Miller's allegations of disabling pain and limitations were not supported by the other evidence of record. It found that Miller had the residual functional capacity for work which did not require standing and walking more than four hours a day, sitting more than six hours a day, lifting and carrying more than twenty pounds frequently, and which permitted intermittent changes of position. The Appeals Council held that Miller was not disabled because the VE had established the existence of a significant number of sedentary jobs consistent with his residual functional capacity.
 
 
 5
 Upon the return of this matter to the district court, a judgment was ultimately entered in favor of the Secretary. Upon review we conclude that there is substantial evidence in support of the Secretary's decision and we affirm.
 
 I.
 
 6
 Miller is a high school graduate who was forty-seven years of age at the time of the Appeals Council's final decision. His past relevant work was as a machine operator, which is semi-skilled heavy work, and as an assembler, which is unskilled heavy work. Claimant stopped working in 1983 at which time he felt he could no longer handle the physical demands of his job. In December of 1983, claimant was examined by Dr. LeRoy Shouse, an orthopedic surgeon, who diagnosed Miller as having spondylolisthesis and mild degenerative changes with decreased disc space and spur formation of the vertebral bodies. Subsequent examinations by Dr. Shouse between March and December 1984 showed no real changes in Miller's condition other than somewhat decreased pinprick sensation in his feet and a mildly reduced right knee jerk. There are no examination reports from Dr. Shouse following December 1984. In April 1986, Dr. Shouse reported to Miller's attorney that Miller could lift twenty pounds occasionally and ten to fifteen pounds frequently; stand and walk two and one-half hours (twenty to thirty minutes at a time); sit one and one-half hours (fifteen to thirty minutes at a time); and never balance, stoop, crouch or kneel. He also felt that Miller should avoid moving machinery, extreme temperatures, humidity and vibration.
 
 
 7
 Miller was also treated by R.H. Pedicord, a chiropractor. In a report dated February 14, 1986, Dr. Pedicord noted Miller's spondylolisthesis and spondylosis and described difficulty sitting and standing due to these problems. Dr. Pedicord opined that Miller could not work.
 
 
 8
 A physician who reviewed the medical evidence in March 1984 also was of the opinion that Miller's condition significantly reduced his ability to sit. Jerry Liepack, M.D., reported that Miller should not do any bending because of his spondylolisthesis, and that he would be capable of sitting less than six hours of an eight-hour day.
 
 
 9
 Subsequent to the hearing on remand before the second ALJ, Miller was also examined by Steven Wunder, M.D., at the request of the ALJ. Miller was able to walk on his heels and toes; his gait was not antalgic; he displayed inconsistent results during muscle testing; with full efforts he tested as normal, but at other times he exhibited giveaway responses. He also showed inconsistencies as to his posture. When aware he was being examined, he stood with a list to the right; on indirect examination, he did not display this list. While Miller complained of reduced pinprick sensation, Dr. Wunder could not relate Miller's response to any typical nerve distribution pattern. Dr. Wunder also noted that comparison of x-rays from 1983 and 1986 revealed no worsening of the spondylolisthesis.
 
 
 10
 Dr. Wunder also assessed Miller's capacity for work activities based both on his own examination and on a review of Miller's medical records. He concluded that Miller was limited to carrying forty pounds occasionally and twenty pounds frequently, standing four to six hours in a workday (two hours at a time), and sitting six hours (two hours at a time). Dr. Wunder also believed that Miller was able to do only occasional bending, stooping, crouching, kneeling and crawling due to a knee disorder. He found no other limitations on Miller's capacity for work.
 
 
 11
 At the hearing the VE testified that Miller had some transferrable skills, but not to the type of light jobs which would permit changing of position at will or to sedentary jobs. The VE indicated, however, that since Miller was a high school graduate, he would be able to do a number of sedentary entry-level clerical jobs which allowed intermittent changes of position. The VE felt there were four to five thousand such jobs within the region.
 
 II.
 
 12
 On appeal, Miller makes two arguments: (1) the Secretary should not have rejected the treating physician's opinion and (2) the Secretary failed to demonstrate the existence of work in the national economy which Miller could perform. We will address these contentions seriatim.
 
 A. The Treating Physician
 
 13
 The Secretary did not reject the treating physician's opinion. Rather, the Secretary found nothing in the objective medical findings by Dr. Shouse inconsistent with Miller being able to do sedentary work. We agree. Additionally, there were no reports from Dr. Shouse later than 1984, and at no time was Miller ever given a CT scan, an EMG or myelogram, told to wear a back brace or to undergo extensive physical therapy. The medicine Miller took for pain was essentially mild over-the-counter analgesics.
 
 
 14
 Although Dr. Pedicord points a bleaker picture, his chiropractic findings are generally unsupported by clinical testings or other objective evaluation. Under these circumstances we are able to find the necessary substantial evidence to support the Secretary's determination in the medical findings of Dr. Wunder. The assessment of Miller's vocational capabilities was also buttressed by the lack of convincing medical evidence of greater functional limitations than those assessed by Dr. Wunder and an express finding that claimant was not fully credible.
 
 
 15
 B. The Existence of Work Which Miller Could Perform
 
 
 16
 Claimant argues that he is unable to do the sitting required by sedentary clerical work. This argument appears to be predicated upon a misconception of the law as it relates to the performance of sedentary work. Miller argues that at most he can sit six hours in a work day. However, it is not a requirement of being able to do sedentary work that one must be able to endure unrelieved sitting, standing or walking. If the job allows for intermittent alteration of position then it is within the range of claimant's residual functional capacity for sedentary work. Here, the VE testified that at least four thousand such jobs existed in the region. In the original administrative proceedings, the Secretary concluded that Miller could do sedentary and light work which permitted intermittent changes of position. The district court did not reverse this assessment of Miller's capacity; rather, the parties agreed that, given this capacity, the Secretary should have obtained vocational expert testimony and not simply relied on the grids. Accordingly, the district court remanded the case so such vocational evidence could be obtained. On remand, the Secretary obtained expert testimony that identified sedentary jobs Miller could do given his need for intermittent changes in position.
 
 
 17
 AFFIRMED.
 
 
 
 *
 Honorable Edward H. Johnstone, Chief Judge, United States District Court, Western District of Kentucky, sitting by designation
 
 
 [1]
 Since the ALJ determined that claimant could do sedentary or light work only if such work allowed for intermittent changes of position, the reliance on the grids was inappropriate